**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| EDWARD EUGENE GARNER,<br><br>      Plaintiff,<br><br>vs.<br><br>WARDEN NASH et al.,<br><br>      Defendants. | 3:16-cv-00410-RCJ-WGC<br><br>**ORDER** |

This is a prisoner civil rights complaint pursuant to 42 U.S.C. § 1983. The Court now screens the Complaint under 28 U.S.C. § 1915A.

I. **FACTS AND PROCEDURAL HISTORY**

Plaintiff Edward Garner is a prisoner in the custody of the Nevada Department of Corrections ("NDOC"). Plaintiff has sued Warden Nash, Caseworker Fierro, and Sergeant Mumpower for events that took place while Plaintiff was incarcerated at High Desert State Prison ("HDSP"). He alleges that on March 13, 2013, while in segregation, Plaintiff spoke to his caseworker and saw that he was listed as a "blood" gang member and designated a member of a security threat group ("STG"). Plaintiff was "dumbfounded" because he was raised to "never disrespect [himself] by joining any form of gang." After Plaintiff complained to his caseworker, the caseworker checked and told Plaintiff that he was "not considered STG per se, but he [was] in the computer as a blood suspect." According to Plaintiff, this meant that the NDOC could not

prove that Plaintiff was in a gang. To fix this, Plaintiff submitted kites to the STG office, the offender management division office, and Warden Nash, to no avail. Correctional Officer Webber told Plaintiff, "Fuck you, this is from what happened with C/O Stevens . . . ." Stevens had assaulted Plaintiff on May 31, 2012.

On September 14, 2014, Nash determined Plaintiff to be "mentally weak" and housed him in a mental health unit. On December 7, 2014, prison officials moved Plaintiff back to administrative segregation due to accusations of horse playing. Prison officials issued Plaintiff a notice of charges which they later dismissed. Plaintiff opposed going to general population because he had been raped and beaten by eight inmates in May 2012. Those inmates told Plaintiff that he would be killed if he snitched. After Plaintiff reported that incident to Stevens, Stevens beat Plaintiff up. When Plaintiff told Fierro this, Fierro laughed and told Plaintiff he was going to general population or protective custody "like it or not." Plaintiff responded, "Fuck you, [you're] trying to get me killed. [You're] a bum caseworker put me in as whatever you like, like Northanio or (NV-13) 28st," two Mexican/Latino gangs NDOC officials knew refused to join in blacks (like Plaintiff). Fierro labeled Plaintiff as a NV-13 and put him in danger by labeling Plaintiff as a member of two rival gangs (blood and NV-13). On September 16, 2015, Sergeant Satterly spoke to Plaintiff regarding his STG status. Plaintiff told Satterly that he had lived on 28th Street but "never joined or was [apart] of any gang." Later, an officer hired Plaintiff as a porter, but Fierro fired Plaintiff due to his blood and NV-13 STG status. Fierro did this to retaliate against the Stevens' situation at SDCC.

Plaintiff filed a grievance to have a hearing. On October 22, 2015, Plaintiff had an STG status hearing before Nash, Mumpower, Barrett, and Satterly. Those prison officials never asked Plaintiff if he was a "blood." Instead, Mumpower pulled out a black and white blurry photo from 2003 of a prisoner showing gang signs. The inmate in the photo had the name "Gardner"

instead of "Garner."  Mumpower had put Plaintiff's inmate number with another inmate's last name.  Plaintiff told them that the inmate in the photo was not him.  At the end of the hearing, Nash agreed to remove the NV-13 label.  Plaintiff was set to transfer to Ely State Prison.  However, after Nash removed the NV-13 STG status, Plaintiff should not have been transferred to ESP.  At the end of the hearing, Mumpower made it clear that they were not going to fix the "blood suspect" label.  When Plaintiff said "okay," Satterly construed Plaintiff's answer as agreeing to being listed as a blood suspect.

On July 12, 2016, the Court issued an order directing Plaintiff to file a fully complete application to proceed in forma pauperis.  The Court also noted that Plaintiff had filed three different civil rights complaints in this case and directed him to file an amended complaint incorporating all three complaints into one amended complaint or to open three new cases for each of his complaints.  In response, Plaintiff filed a motion to cure deficiencies.  In the motion, Plaintiff explains that he was not seeking to file three separate civil actions but had submitted three copies of his complaint: one for the court, one for the Attorney General, and one for his personal file.  Plaintiff filed a motion of clarification which explained the same.  The Court now grants those motions in part.  The Court notes that Plaintiff did not submit three identical civil rights complaints.  Instead, one complaint has 9 pages, one has 17 pages, and one has 16 pages.  All three complaints appear to sue Defendants Nash, Fierro, and Mumpower.  The Court will screen the second complaint because it is 17-pages long and appears to be the most thorough.  The Court finds that ECF No. 1-2 is the operative complaint in this case.

## II.     LEGAL STANDARDS

District courts must screen cases in which a prisoner seeks redress from a governmental entity or its officers or employees. 28 U.S.C. § 1915A(a).  A court must identify any cognizable claims and must dismiss claims that are frivolous, malicious, insufficiently pled, or directed

against immune defendants. *See id.* § 1915A(b)(1)–(2).  Pleading standards are governed by Rule 12(b)(6). *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012).  All or part of a complaint filed by a prisoner may be dismissed if the prisoner's claims lack an arguable basis in law or in fact.  This includes claims based on legal conclusions that are untenable, e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations, e.g., fantastic or delusional scenarios. *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), he must also allege the facts of his case so that the court can determine whether he has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review). Put differently, *Conley* only required a plaintiff to identify a major premise (a legal theory) and conclude liability therefrom, but *Twombly-Iqbal* requires a plaintiff additionally to allege minor premises (facts of the plaintiff's case) such that the syllogism showing liability is complete and that liability necessarily, not only possibly, follows (assuming the allegations of fact are true).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

When a court dismisses a complaint upon screening, the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

## III.   ANALYSIS

The Court interprets the allegations as claims for Fourteenth Amendment due process violations and First Amendment retaliation.  The Court notes that, absent equitable tolling, the statute of limitations has run as to any event occurring before July 8, 2014, i.e., two years before Plaintiff filed the Complaint. *See Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989) (citing Nev. Rev. Stat. § 11.190(4)(e)).

### A.   Due Process

Plaintiff has no due process claim for having been wrongly labeled as a "blood," because he admits the labeling occurred no later than March 13, 2013 when he found out about it.  The statute is tolled during the grievance process, *see Wisenbaker v. Farwell*, 341 F. Supp. 2d 1160, 1165 (D. Nev. 2004) (Hicks, J.), but Plaintiff alleges he did not file a grievance until September 18, 2015, so in this case, the tolling rule is of no aid to Plaintiff as to his "blood" claim because the statute of limitations on a future § 1983 action based on this alleged misclassification ran before he even filed a grievance.  And because Plaintiff cannot attack his "blood" designation, he has alleged no separate harm to his liberty interests from having also been later labeled as "NV-13," and that label has since been removed, anyway.  This claim is dismissed, without leave to amend.

///

**B.     First Amendment**

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Plaintiff alleges that Fierro retaliated against him by labeling him as "NV-13." The allegations do not indicate that the "NV-13" classification was made in retaliation for previous grievances against Stevens. The only allegation concerning the Stevens incident as a motivation for any correctional officer's actions is when Webber explained to Plaintiff that he had previously been designated as a "blood" because of the 2012 altercation with Stevens. At most, Fierro is accused of retaliating against Plaintiff by labeling him as "NV-13" based on Plaintiff's "Fuck you, [you're] trying to get me killed. [You're] a bum caseworker put me in as whatever you like, like Northanio or (NV-13) 28st" comment. But even assuming the decision was based purely on a retaliatory motive, and not a perception that Plaintiff was acquiescing to the label based on some evidence, Plaintiff's comment was not protected. It was not a petition for redress of grievances, and even insulting language to prison officials is not protected by the First Amendment, much less fighting words like "fuck you." *See Walker v. Bertrand*, No. 00-C-350-C, 2003 WL 23162312, at *5–6 (W.D. Wis. July 28, 2003) (finding that even in the context of a grievance, no First Amendment retaliation claim lied where a prisoner referred to another officer as "ignorant") (citing *Turner v. Safley*, 482 U.S. 78 (1987)). This claim is dismissed, without leave to amend.

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Proceed in Forma Pauperis (ECF No. 6) and the Motion to Extend Time (ECF No. 4) are DENIED as moot.

IT IS FURTHER ORDERED that the Motion to Cure Deficiencies (ECF No. 5) and the Motion of Clarification (ECF No. 7) are GRANTED IN PART.

IT IS FURTHER ORDERED that the Complaints (ECF Nos. 1-1 and 1-3) are STRICKEN as redundant.

IT IS FURTHER ORDERED that the Clerk shall DETACH and FILE the Complaint (ECF No. 1-2).

IT IS FURTHER ORDERED that the Complaint is DISMISSED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 8th day of March, 2017.

_____
ROBERT C. JONES
United States District Judge